### KOCH v. KEEN.

No. 18221—Opinion Filed April 26, 1927.

(Syllabus.)

1. Judges—Lack of Vacancy to Fill by Appointment—Effect of Partial Unconstitutionality of Act Creating Superior Court.

Where an act creating a superior court in one county and providing that it shall be presided over by the district judge of the district embracing said county, is held unconstitutional in so far as it relates to said district judge, there is no vacancy to be filled by the Governor.

2. Prohibition—Writ to Restrain One Acting as Judge Who is not De Facto Officer.

Although the writ of prohibition will not be issued against a judge de facto to try the title to office, yet where a person, not a de facto officer, is attempting to exercise judicial force in a court legally created, this court, under its general supervisory control of inferior courts, will restrain such action by writ of prohibition.

3. Officers—No De Facto Officer Where no Office.

There can be no de facto officer where there is no office to fill.

Original proceeding for a writ of prohibition by E. W. Koch against W. P. Keen. Writ granted.

Meacham & Meacham and Walter S. Mills, for plaintiff.

A. J. Welch and A. E. Darnell, for defendant.

MASON, V. C. J. This is an original proceeding brought in this court by E. W. Koch, as plaintiff, against W. P. Keen, in which he seeks a writ of prohibition restraining the defendant from exercising jurisdiction as judge of the superior court of Custer county in the trial of a certain injunction proceeding brought by Koch against the Security National Bank.

Under section 1, chapter 26 of the Session Laws 1923, a superior court was established in all counties of the state having a population of not less than 18,400 and not more than 18,980, as shown by the federal census of 1920, and having therein a city of the first class with a population of not less than 2,500 located within five miles of the county seat of any such county, and the county seat therein having a population of not more than 500, as shown by said census. Said section

also provided that said court and the offices of its officers should be maintained in said city, hereinbefore described, other than the county seat.

Section 2 of said act provided that said court should be held and presided over by the regular district judge within and for the judicial district including such county, and that the court clerk of such county should be the clerk of said court and that the court reporter of that judicial district should act as reporter of said court. Said section also provided that such district judge, court clerk, and court reporter should receive no additional compensation for such services.

Sections 3, 4, and 5 pertain to the seal fees, and records of said court. Section 6 provided for transferring cases from the district court to said superior court, and section 7 provided the method of selecting juries in such court.

The enactment of the foregoing statute resulted in the establishment of but one superior court in the state, viz., the superior court of Custer county.

In the case of C., R. I. & P. Ry. Co. v. Carroll. Brough. Robinson & Humphrey, 114 Okla. 193, 245 Pac. 649, the constitutionality of the foregoing act was drawn in issue. It was contended that said act was a local and not a general law by reason of the arbitrary and capricious classification made in the first section of said act. and that inasmuch as it had not been advertised, as required in the enactment of local laws, the same was void. This court, in passing on that question, concluded that the classification used in said section was arbitrary and capricious, but reluctantly followed the rule announced in Leatherock v. Lawter, 45 Okla. 720, 147 Pac. 324, to the effect that an act establishing a superior court for a single county was not a local or special law. but was general legislation and for that reason section 1 was held constitutional. Said opinion further held that, inasmuch as section 2 of said act applied to only one district judge in the state, it was a local law and therefore unconstitutional. The opinion then held that, inasmuch as the creation of the court was constitutional, the acts of the district judge, while acting in the capacity of judge of said superior court. were valid by reason of the fact that he was a de facto judge of said superior court up until the time said act was held unconstitutional.

After said decision, the district judge refused to act further in said capacity as judge of said superior court, and on April 6, 1926,

the Governor, acting under authority of article 6, section 13, of the Constitution of Oklahoma, appointed the defendant herein. W. P. Keen, as judge of said court. Said constitutional provision provides that when any office shall become vacant the Governor, unless otherwise provided by law, shall appoint a person to fill such vacancy.

Subsequently, the Security National Bank obtained a judgment of foreclosure in said superior court against E. W. Koch, the plaintiff herein, and in due time an order of sale issued out of said court and Koch filed an injunction suit in the district court of Custer county to enjoin said sale. Upon motion of said bank, the case was transferred to the superior court of Custer county. The plaintiff appeared specially and objected to the jurisdiction of said court and the judge thereof upon various grounds. which were overruled, and the cause was assigned for trial on a day certain. Koch then commenced this action, alleging that the defendant, Keen. is unlawfully threatening to use judicial force by hearing said injunction proceeding.

The writ is sought on the following grounds:

(1) That the defendant has no jurisdiction to hear said cause.

(2) That said cause was transferred from the district court without authority of law.

(3) That the defendant, Keen, is not a lawfully constituted judge of said superior court.

(4) That the Governor acted without authority of law in attempting to appoint the defendant as judge of said court.

(5) That, conceding that the defendant was lawfully appointed judge of said court, he forfeited the same by subsequently accepting, qualifying, and acting as police judge of the city of Clinton.

(6) That the salary of said defendant is being paid by private subscriptions and by the Clinton Chamber of Commerce, of which the officials of the bank are members.

(7) That said court is not legally in session and that no term can be legally called.

The principal question presented is, Was there a vacancy in the office of the judge of the superior court of Custer county to be filled at the time of the appointment of the defendant by the Governor? This involves the further question as to whether or not the act establishing said court created the office of

judge of said superior court. It must be kept in mind that under the act creating said court, it was to be held and presided over by the district judge of that county, and in the case of C., R. I. & P. Ry. Co. v. Carroll, Brough, Robinson & Humphrey, supra, that portion of the act was stricken, although the creation of the court was upheld. As a general proposition the establishment or creation of a court would impliedly originate or create the office of judge of said court, as well as such other offices as might be necessary for said court to function. It is clear, however, that this was not the intention of the Legislature in the act under consideration.

It is obvious that those sponsoring the creation of said court were familiar with the provisions of section 25, article 7, of the Constitution, which provides that the terms of the district court shall be held at the county seat of the respective counties, and that they were desirous of evading such provision by creating, in name only, another court which was to hold its sessions in the city of Clinton, but that said court should be presided over by the district judge and other officers of the district court and should have the same jurisdiction and procedure as the district court. It is also apparent that it was the intention of the Legislature that no new offices were to be created and that no additional expenses were to be incurred by the establishment of such court. The Legislature, by said act, evidently intended that said court should be presided over by the district judge of that district and no other person. The statute makes no provision for the office of judge of the superior court or for an incumbent to hold such position other than the one who may for the time be invested with the office of district judge.

In the case of People, by J. G. McCullough, Attorney General, ex rel. Simmons v. Sanderson, 30 Cal. 160, the Supreme Court of California was considering a question very similar to the one before us. In that case, the Legislature had created a board of trustees of the State Library and provided that the Chief Justice of the Supreme Court should be an ex officio member of said board, and the court held that under certain constitutional provisions of that state the Chief Justice could not act in that capacity. The Governor of the state, being of the opinion that a vacancy existed, attempted to appoint another person as such trustee, but the Supreme Court held that there was no vacancy. The rule is announced in the 4th paragraph of the syllabus as follows:

"If an act creating an office provides that the incumbent of another office (naming it) shall, ex officio, fill the office created, and the incumbent of the other office is by the Constitution prohibited from holding the office created, there is no vacancy to be filled by the Governor, and an appointment by him is without authority and void."

In considering the case of C., R. I. & P. Ry. Co. v. Carroll, Brough, Robinson & Humphrey, supra, we probably would have been justified in striking down the entire act of the Legislature by reason of the fact that section 2 was unconstitutional, upon the theory that the act was not divisible. That question, however, was not presented, but our attention was called to the fact that hundreds of cases, both civil and criminal, had been finally adjudicated by said court and that it would work a great hardship on litigants who had relied thereon and that it would create endless confusion if we held the entire act unconstitutional. The creation of the court was held constitutional and the section relative to the district judge acting as judge of said court was held unconstitutional. but inasmuch as the acts of the district judge, while acting as judge of said superior court, were those of an officer acting under an unconstitutional law, we held that they were valid as acts of a de facto officer. At that time, we were aware of the conflict in the decisions as to whether or not an unconstitutional statute should be treated as void ab initio. We were not unmindful of the cases which hold that an office founded upon an unconstitutional statute is not legally in existence and, therefore, not sufficient to form any basis for the application of the rule as to de facto officers, but we elected to follow the line of cases which hold that an unconstitutional law establishing an office may, until such law has been declared unconstitutional, be regarded as conferring color of title and that the incumbent of such an office should be treated as a de facto officer.

Getting back to the issues in the case at bar, we must conclude that the Legislature did not intend for any person to preside over said superior court other than the district judge of that district, and that no office of judge of said court was created by said act and that there was no office and no vacancy to be filled at the time the Governor attempted to appoint the defendant as judge of said court.

Some contention is made by the defendant that prohibition is not the proper remedy. The right to the writ of prohibition implies

a wrong is about to be committed, not by the parties litigant, but by the person or court assuming the exercise of judicial power and against whom the writ is asked. Like all other prerogative writs prohibition is to be used with great caution and forbearance for the furtherance of justice and to secure order and regularity in judicial proceedings. If there is a legally constituted court and a de facto judge, the title to the office and the right to act cannot be questioned by prohibition, but the remedy can be resorted to only in cases of usurpation of jurisdiction or power, and it has been held that the writ lies to restrain a judge from proceeding in a cause in which he is disqualified by reason of interest. State ex rel. Barnard v. Board of Education (Wash.) 52 Pac. 317, 67 A. S. R. 706. 40 L. R. A. 317; McWhorter v. Dorr (W. Va.) 50 S. E. 838, 110 A. S. R. 815. The question, therefore, turns upon whether or not the defendant herein was acting in the capacity of a de facto officer.

The rule seems to be well established that there can be no de facto officer where there is no office de jure. Oakland Paving Co. v. Donovan (Cal.) 126 Pac. 388; State v. Kelly (Wis.) 143 N. W. 153; People ex rel. Gross v. Hayes, 149 N. Y. S. 115; Flaucher v. City of Camden, 56 N. J. L. 244, 28 Atl. 82.

In Carleton v. People, 10 Mich. 250, the court held that there can be no de facto officer where there is no office to fill.

In Norton v. Shelby County, 118 U. S. 425. 6 Sup. Ct. 1121, 30 L. Ed. 178, the rule is announced in the syllabus as follows:

"While acts of a de facto incumbent of an office lawfully created by law and existing are often held to be binding from reasons of public policy, the acts of a person assuming to fill and perform the duties of an office which does not exist de jure can have no validity whatever in law."

In Ex parte Snyder, 64 Mo. 58, the court held:

"The doctrine of sustaining the acts of an officer de facto cannot be applied where the objection is that the office itself does not lawfully exist. It presupposes an office which the law recognizes."

From the foregoing, we are driven to the conclusion that the defendant herein was not a de facto judge, and that prohibition is a proper remedy to prevent him from exercising judicial force by attempting to act as judge of said court.

If we were to concede that, under the strict technical rules, prohibition is not the proper remedy in the instant case, yet, if said superior court were permitted to proceed indefinitely with the final disposition of both civil and criminal cases until this question was properly called to our attention, it would work endless confusion and a great injustice on the citizens and litigants interested in said cases.

Under the provisions of section 2, article 7 of the Constitution, which gives this court general superintending control over all inferior courts, we conceive it to be our duty, when our attention is called to such a state of facts as exists herein, to issue the writ of prohibition as prayed for. Therefore, let the writ issue.

BRANSON, C. J., and PHELPS, LESTER, HUNT, CLARK, and HEFNER. JJ., concur.

Note.—See under (1) 33 C. J. p. 948, §55 (Anno). (2) 32 Cyc. pp. 602, 620. (3) 29 Cyc. p. 1391.